IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2015

## JAMES ALLEN GOOCH v. STATE OF TENNESSEE

**Criminal Court for Sumner County**
**No. 2009-CR-792      Dee David Gay, Judge**

_____

**No. M2014-00454-CCA-R3-PC - Filed February 4, 2015**

_____

The Petitioner, James Allen Gooch, challenges the denial of his petition for post-conviction relief. On appeal, the Petitioner argues that he was denied effective assistance of counsel, raising seven grounds to support his claim. Additionally, he claims that cumulative error necessitates reversal of the post-conviction court. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Sharlina Pye-Mack, Hendersonville, Tennessee, for the appellant, James Allen Gooch.

Herbert H. Slatery, III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; L. Ray Whitley, District Attorney General; and Lytle Anthony James, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## I. Factual and Procedural Background

Following a jury trial, the Petitioner was convicted of one count of sale of not less than .5 ounces of marijuana within 1,000 feet of a school and one count of attempted sale of .5 grams or more of cocaine. The trial court ordered consecutive sentences of 12 years and 15 years, respectively. The Petitioner appealed, challenging his sentence and the trial court's

denial of his motion to sever his charges. This Court affirmed the judgments of the trial court. State v. James Allen Gooch, Jr., No. M2012-01135-CCA-R3-CD, 2012 WL 4358195, at *1 (Tenn. Crim. App. Sept. 25, 2012), perm. app. denied (Tenn. Jan. 15, 2013).

The Petitioner filed a timely petition for post-conviction relief, alleging ineffective assistance of both trial and appellate counsel. After a hearing, the post-conviction court denied relief. On appeal, the Petitioner challenges the denial of post-conviction relief as to trial counsel only. We interpret the Petitioner's brief to raise the following grounds to support his claim:[1] (1) trial counsel rendered deficient performance when he requested rejoinder of the offenses after they had been severed; (2) trial counsel failed to object to any of the State's questions during trial; (3) trial counsel failed to challenge the introduction of audio/video recorded (the "recordings") evidence for lack of authentication; (4) trial counsel failed to object to the State being allowed to reopen its proof after a Momon hearing was conducted; (5) trial counsel failed to inform the Petitioner of his right to testify at trial; (6) trial counsel failed to investigate the Petitioner's alibi defense; and (7) a number of the Petitioner's constitutional rights were abridged. Additionally, the Petitioner argues that cumulative error necessitates reversal of the post-conviction court's judgment.

*Trial Proceedings*

The Petitioner was indicted for two separate drug transactions.[2] Prior to trial, the Petitioner filed a motion to sever the charges, which the State did not oppose, and the trial court granted the motion. Subsequent to the severance, on August 31, 2010, the Petitioner's counsel withdrew, and trial counsel was appointed. On December 3, 2010, trial counsel made an oral motion to rejoin the offenses. At the time of the motion, trial counsel explained that the Petitioner "very much want[ed] to have both of these charges tried at the same time." The trial court also had the following exchange with the Petitioner:

THE COURT: Okay. Mr. Gooch, you realize that this could be prejudicial to you?

THE [PETITIONER]: Yes, sir.

---

[1] The Petitioner's brief presents several unclear arguments. In an attempt to address the Petitioner's claims, we interpret the substance of his arguments to address the issues stated above.

[2] To assist in the resolution of this proceeding, we take judicial notice of the record from the Petitioner's direct appeal. See Tenn. R. App. P. 13(c); State v. Lawson, 291 S.W.3d 864, 869 (Tenn. 2009); State ex rel Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964).

THE COURT: The fact that you're trying two counts as opposed to one and the jury dealing with two situations as opposed to one?

THE [PETITIONER]: Yes

THE COURT: This is what you want to do?

THE [PETITIONER]: Yes, sir.

The trial court ordered the offenses to be rejoined.

However, three days before trial, on January 7, 2011, trial counsel made an oral motion to re-sever[3] the offenses. He explained that he felt trying the offenses separately would be less prejudicial to the Petitioner. The trial court denied the motion to re-sever.

At the end of the first day of trial, trial counsel conducted a Momon hearing with the Defendant, wherein the Defendant stated that he did not want to testify. After the Momon hearing, the State informed the trial court that it had one additional witness, Investigator Russell of the drug task force, who was unable to make it to court due to inclement weather. The trial court allowed the State to call Investigator Russell the following morning. After the close of proof, the jury convicted the Petitioner of both offenses.

*Post-Conviction Proceedings*

At the post-conviction relief hearing, trial counsel testified that, after he was appointed to the case, he spent many hours talking to the Petitioner in preparation for trial. At no time did the Petitioner provide trial counsel with information regarding the identify of an alibi witness or any possible affirmative defense. Consequently, trial counsel developed a trial strategy in which he tried to discredit the State's proof and highlight the weaknesses of its case against the Petitioner.

Additionally, trial counsel noted that the Petitioner's offenses had been severed by another attorney before trial counsel was appointed to represent the Petitioner. Trial counsel explained that he moved the court to rejoin the cases based on his understanding of the facts of the case and the law. He also noted that the Petitioner was "absolutely insistent" that the charges be rejoined. After the offenses were rejoined, trial counsel interviewed two of the State's witnesses. Then, on January 7, 2011, trial counsel moved the trial court to re-sever the offenses, and his motion was denied. He explained that he moved to re-sever the charges

---

[3] Trial counsel also filed a written motion to re-sever on the first day of trial, January 10, 2011.

because there may have been "some marginal benefit in having them tried separately because of possible–the inflammatory nature and prejudicial nature of the two charges being tried together, but I thought that it would only be marginal. I didn't think that it would . . . be conclusive as far as the outcome." The case proceeded to trial on January 10, 2011, and trial counsel stated that he was "totally" prepared for trial and that he knew what each witness would say on the stand.

Trial counsel testified that, as a matter of strategy, he did not file any motions to prevent the introduction of the recordings of the drug transactions and he did not object to their introduction at trial. Trial counsel stated:

> Those tapes I thought were golden because they were indecipherable . . . There was only one voice that was intelligible, and that was [the confidential informant]. And the other voice was totally non-intelligible at any time . . . There was nothing on those tapes that tied [the Petitioner] into any of these transactions; nothing. And that was part of the strategy. I wanted those tapes to show how weak the State's case was.

Trial counsel testified that he did not object to leading questions in the State's direct examination of the confidential informant because the State was asking foundational questions. Additionally, trial counsel stated that he did not recall any objectionable hearsay from the police officers' testimonies and that, if there was any, he did not object. Trial counsel also stated that he did not recall any of the statements he made to the trial court when he moved for re-severance of the offenses.

Trial counsel noted that he conducted a Momon hearing with the Petitioner at the end of the first day of trial. After the Momon hearing, the State called Officer William Russell to testify. Trial counsel explained that Officer Russell was unable to come to the courthouse on the first day of trial due to inclement weather. The State asked for and was granted permission to call Officer Russell as a witness the following day. Trial counsel did not object to Officer Russell testifying the next day.

On cross-examination, trial counsel noted that, on the day he was appointed to represent the Petitioner, the Petitioner himself told the trial court that he wanted his offenses to be rejoined. Additionally, trial counsel noted that, before rejoining the charges, the trial court advised the Petitioner that rejoining the offenses could be prejudicial to his case. Despite that warning, the Petitioner "was very insistent that they be joined."

Trial counsel further explained that he wanted the "indecipherable" recordings of the drug transactions to come into evidence to introduce some doubt for the jury. Had they been

excluded, the confidential informant could simply have testified as to what the Petitioner said to him. As to any other defenses, the Petitioner never indicated to trial counsel that he was not involved in the charged offenses, and he never provided trial counsel with the names of any alibi witnesses. Finally, the Petitioner told trial counsel "many times" that he would not testify on his own behalf.

Vanessa Manning, the Petitioner's sister, testified that, on the day of the second charged offense, February 23, 2009,[4] the Petitioner was at her home in Lewisburg, Tennessee. The Petitioner arrived at Ms. Manning's home around February 20, 2009, to celebrate Ms. Manning's birthday. He left Ms. Manning's home on February 24, 2009. After he returned home, the Petitioner's mother called Ms. Manning to inform her that the Petitioner had been arrested. On cross-examination, Ms. Manning admitted that she knew the Petitioner was charged with an additional offense that occurred on January 22, 2009. She further explained that she did not tell law enforcement or anyone involved with the Petitioner's defense that the Petitioner was at her home in Lewisburg on February 23, 2009, because she did not know when his court date was set.

In denying the petition for post-conviction relief, the post-conviction court explicitly credited trial counsel's testimony. It found that trial counsel met with the Petitioner multiple times and conducted a thorough investigation of the case. At the time trial commenced, trial counsel was "totally prepared" and knew what each witness would say. Additionally, the court noted that, when trial counsel first met with the Petitioner, the Petitioner wanted the offenses rejoined. In fact, on more than one occasion, the Petitioner stated in court that he wanted the offenses rejoined–even after the trial court informed him that rejoinder could prejudice his case. The offenses were rejoined, and the post-conviction court noted that this Court affirmed the trial court's denial of a subsequent motion to re-sever.

As to the authentication of the recordings, the post-conviction court found that it was trial counsel's strategic decision not to object to the tapes to ensure that they were introduced as evidence. Additionally, the post-conviction court found that the Petitioner never told trial counsel about any potential alibi witness, and it specifically discredited Ms. Manning's testimony. Finally, the post-conviction court found no merit to the Petitioner's argument regarding the timing of the Momon hearing. The post-conviction court noted that a Momon hearing occurred and stated that the timing of the hearing was immaterial under these circumstances. Additionally, the post-conviction court noted that the Petitioner told his attorney many times that he did not wish to testify.

---

[4] It is unclear from Ms. Manning's testimony when the relevant charged offense occurred. Post-conviction counsel's direct-examination indicates that the offense occurred on February 22, 2009. Conversely, the State's cross-examination indicates that the offense occurred on February 23, 2009. According to the indictment, the charged offense occurred on February 23, 2009.

Overall, the post-conviction court found that trial counsel gave a "sound, thorough" performance and noted that a reviewing court must defer to counsel's strategic decisions in an ineffective assistance of counsel review. Additionally, the post-conviction court found that the Petitioner "[did] not come close to proving [the] allegations by clear and convincing evidence" and that the Petitioner was adequately represented at trial. This timely appeal followed.

## II. Analysis

In order to prevail upon a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012); Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Whether the petitioner has met his burden of proof is a question of law that this Court reviews de novo. Arroyo v. State, 434 S.W.3d 555, 559 (Tenn. 2014).

Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). The trial court's findings of fact are conclusive unless otherwise proven by a preponderance of the evidence. Burns, 6 S.W.3d at 461; State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Burns, 6 S.W.3d at 461 (citing Henley, 960 S.W.2d at 579). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Fields, 40 S.W.3d at 458 (citing Henley, 960 S.W.2d at 579). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." Id. The trial court's application of the law to the facts of the case are also reviewed de novo with no presumption of correctness. Burns, 6 S.W.3d at 461.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to prevail in a post-conviction relief proceeding on the grounds of ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal

and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)); see also Goad, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936. Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. Granderson v. State, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694)(internal quotation marks omitted).

*Rejoinder of Charges*

It appears that the Petitioner's primary challenge to trial counsel's performance relates to the decision to rejoin the Petitioner's charges. The Petitioner addresses this issue at several different points in his brief, but the details of his argument are unclear. Based on our interpretation of his brief, the Petitioner makes two claims to support his argument that trial counsel was deficient when he moved the court to rejoin the Petitioner's charges: (1) the Petitioner's decision to rejoin the charges was based on inaccurate advice from trial counsel and therefore was involuntary; and (2) trial counsel made inconsistent statements regarding his preparedness when he moved the court to rejoin the charges, and these inconsistent

remarks show that trial counsel was unprepared when he moved to rejoin the charges.[5]  We will address each claim in turn.

### a.  Inaccurate Advice

First, the Petitioner claims that he agreed to rejoin his charges based on "inaccurately given" advice from trial counsel.  He states, "[The Petitioner's] agreement to join the charges were [sic] involuntarily entered without his understanding of the nature and the consequences of the joinder because his trial counsel failed to adequately prepare and inform him of such decision."  In other words, the Petitioner contends that he relied on trial counsel to advise him as to the consequences of rejoining the charges and trial counsel failed to give sound advice, rendering his decision to rejoin the charges involuntary.

To support his argument, the Petitioner points to Walton v. State, 966 S.W.2d 54 (Tenn. Crim. App. 1997), in which this Court stated that erroneous advice regarding parole eligibility could be used to establish a claim for ineffective assistance of counsel during the plea process.  966 S.W.2d at 55.  In that case, both the petitioner and his parents testified that trial counsel erroneously told the petitioner that he could be released on parole after serving seven and a half years in confinement.  Id. at 54.  Trial counsel denied giving such advice. Id.  This Court remanded the case for a factual determination from the trial court about trial counsel's advice.  Id.

The Petitioner argues that Walton is analogous to this case at bar.  However, unlike Walton, the Petitioner presented absolutely no evidence at the post-conviction hearing as to the substance of trial counsel's advice with respect to the decision to rejoin the charges.  He simply states that trial counsel gave him inaccurate advice.  Therefore, the Petitioner failed to show that counsel was deficient.  Additionally, the Petitioner does not address how he was prejudiced by the decision to rejoin the charges.  Therefore, we find that this argument has no merit.

### b.  Preparedness for the Motion to Rejoin

Second, the Petitioner argues trial counsel was inadequately prepared when he moved the trial court to rejoin the charges on December 3, 2010.  As evidence of this claim, the

---

[5] With regard to the second claim, the majority of the Petitioner's argument is devoted to explaining how two different statements from trial counsel are inconsistent, and at later points in the brief the Petitioner makes conclusory statements that trial counsel was inadequately prepared when he moved the trial court to rejoin the charges.  Viewing the brief in its entirety, we believe the Petitioner's conclusory statements and the argument about the allegedly inconsistent statements constitute one argument, as articulated above.

Petitioner points to two statements made by trial counsel, which the Petitioner claims are inconsistent. First, trial counsel testified at the post-conviction hearing that he was "totally" prepared for trial. In contrast, the Petitioner points to trial counsel's comment from the January 7, 2011, pretrial conference, when trial counsel moved the trial court to re-sever the cases, wherein trial counsel stated, "I had no material, I had no knowledge [about the case]." The Petitioner contends that both trial counsel's testimony at the post-conviction hearing and his statement from the January 7, 2011, pretrial conference describe his knowledge of the case as of December 3, 2010, when he asked the court to rejoin the charges.

First, we note that trial counsel testified at the post-conviction that he was "totally" prepared for trial." That statement does not refer to trial counsel's preparedness on December 3, 2010,when he asked the trial court to rejoin the charges.

Second, the Petitioner seems to ignore the context of trial counsel's January 7, 2011, comment that he had no material or knowledge of the case. Trial counsel made the comment to which the Petitioner refers during the following exchange:

[TRIAL COUNSEL]: We agreed to a joinder in December, Your Honor.

THE COURT: Right. That's right. I see that now. Let the record reflect, that you agreed to a joinder on December 3rd.

[TRIAL COUNSEL]: Right, and at that time, September or whatever the date was, that was–I had gotten the case passed off to me from prior counsel. I had literally I had no material, I had no knowledge. I was asked the question, do I think I could do both and without any knowledge about what the charges were, much less the facts of the case or any of the counts, I took the position that I guess I could.

While we acknowledge that there may be multiple interpretations of trial counsel's January 7, 2011, statement, we do not agree with the Petitioner's contention that trial counsel was speaking about his knowledge of the case as of December 3, 2010. From the context of his statement, it appears that he was speaking of his knowledge of the case as of the day he was appointed to represent the Petitioner. He references the period of time when the case was "passed off" to him. Trial counsel was asked if he believed he would be able to try both charges together and, having no knowledge of the case, trial counsel informed the inquirer[6] that he believed he could. Therefore, we do not believe trial counsel's statements are inconsistent, and neither statement describes trial counsel's preparedness when he moved the trial court to rejoin the Petitioner's charges.

---

[6] We are unable to determine who asked trial counsel "do [you] think [you] could do both."

Nevertheless, the Petitioner asserts that these two statements are relevant to trial counsel's preparedness for his motion to rejoin the charges. In the face of such inconsistency, the Petitioner asks this Court to weigh the credibility of trial counsel and credit trial counsel's statement from January 7, 2011, because it was made closer in time to the motion to rejoin. Although the Petitioner recognizes that this Court is not a jury, the Petitioner argues that this Court has the authority to weigh the credibility of a witness "just as a jury would." Despite the Petitioner's request, this Court will not reweigh evidence in the record. See Burns, 6 S.W.3d at 461. Questions of fact, the credibility of witnesses, and weight and value to be given the evidence are resolved by the fact finder. Fields, 40 S.W.3d at 458 (citing Henley, 960 S.W.2d at 579).

Outside of the "inconsistent" statements, the Petitioner failed to present any other evidence that trial counsel was not prepared when he moved to rejoin the charges. Trial counsel testified that he did not recall the statements he made when he asked that the charges be rejoined, and post-conviction counsel failed to asked him about his preparedness when he moved to the rejoin the charges. Moreover, the fact that trial counsel interviewed two witnesses after requesting rejoinder of the charges is not probative evidence on its own that trial counsel was unprepared for the motion to rejoin. Consequently, there is no evidence in the record that trial counsel was inadequately prepared when he moved for rejoinder. Therefore, the Petitioner failed to show that counsel was deficient when he moved the court to rejoin the charges.

*Failure to Object to State's Questions*

At two points in his brief, the Petitioner addresses trial counsel's failure to object to the State's questioning of witnesses. We believe the separate allegations in the brief constitute a single argument, and we will consider them together. First, the Petitioner states that trial counsel failed to object to any of the State's questions during the trial; however, he does not specify which questions he claims were objectionable or provide citations to the record. Later in his brief, the Petitioner argues that trial counsel was deficient for failing to object to the State's asking leading questions and compound questions. At this point, the Petitioner provides general citations to pages in the record where trial counsel supposedly failed to object, but he does not identify the questions to which trial counsel should have objected. In short, the Petitioner argues that, by failing to object to the State's questioning, trial counsel allowed the State to present a version of the evidence to the jury "that went uncontroverted by any proof by the defense."

The Petitioner argues that Gravely v. Mills, 87 F.3d 779 (6th Cir. 1996), should control our analysis of this issue because, like the defense counsel in Gravely, trial counsel failed to "put the State's case to any adversarial test." In Gravely, defense counsel failed to

object to numerous instances where, in the presence of the jury, the prosecutor commented on the defendant's post-Miranda silence. Gravely, 87 F.3d at 786-88. The Sixth Circuit Court of Appeals reversed the district court and granted the defendant's habeas corpus petition, holding that, because the prosecutor repeatedly made unconstitutional references to the defendant's post-arrest silence, it could not conclude that the defendant's conviction was attained through a "fair and impartial judicial process." Id. at 790.

Despite the Petitioner's argument to the contrary, we do not believe Gravely controls the instant case. The Petitioner does not allege that the State's questions abridged one of his constitutionally protected rights. Instead, the Petitioner claims that trial counsel should have objected to unspecified leading questions and compound questions– both evidentiary issues that are left to the trial court's discretion. As such, we do not rely on Gravely in our analysis in this case.

We turn now to the merits of the Petitioner's argument. At the post-conviction hearing, post-conviction counsel asked trial counsel whether he objected to leading questions in the State's direct examination of the confidential informant and hearsay in the direct examinations of the police officers. Trial counsel testified that he did not object during the direct examination of the confidential informant because the State was asking foundational questions and he believed leading questions were appropriate to lay a foundation. Additionally, he stated that he did not recall any hearsay statements in the officers' testimony.

As to leading questions in the direct examination of the confidential informant, trial counsel correctly stated that leading questions may be asked to establish foundational matters. See Tenn. R. Evid. 611(c)(1); State v. Jody Sweat, No. E2000-02472-CCA-R3-CD, 2001 WL 1134604, at *10 (Tenn. Crim. App. Sept. 26, 2001) (quoting State v. Richard Allen Kidd II, No. 03C01-9607-CC-00272, 1997 WL 789909, at *3 (Tenn. Crim. App. 1997)). Further, trial counsel testified that, instead of preventing the State from introducing evidence, it was his trial strategy to expose the weakness of the evidence the State presented at trial. We will not second-guess trial counsel's reasonable strategic decisions on review. See Granderson, 197 S.W.3d at 790. Additionally, the record indicates that trial counsel cross-examined all but one of the State's witnesses, thereby testing the State's case. Therefore, we conclude that trial counsel was not deficient for failing to object to leading questions asked during the State's direct examination of the confidential informant.

To the extent that the Petitioner's brief claims that trial counsel should have objected to the State's questioning separate from the leading questions discussed at the post-conviction hearing, the Petitioner has failed to provide specific citations to the record and has thus waived our review of the issue. See Tenn. Ct. Crim. App. R. 10(b).

*Failure to Challenge the Recordings*

At several points in his brief, the Petitioner argues that trial counsel was deficient for failing to challenge the introduction of the recordings of the charged drug transactions. The Petitioner contends that the State failed to authenticate the recordings as required by Tennessee Rule of Evidence 901. However, trial counsel testified at the post-conviction hearing that he intentionally did not object to the introduction of the recordings as a matter of strategy. He wanted the jury to hear the recordings to highlight a weakness in the State's case. This Court will not second-guess trial counsel's reasonable strategic decisions on review. See Granderson, 197 S.W.3d at 790. Therefore, we find that trial counsel was not deficient for failing to challenge the introduction of the recordings.

*Momon Hearing*

The Petitioner argues that trial counsel was deficient for failing to object to the State calling a witness after the Momon hearing was conducted. The Petitioner claims that it is procedurally incorrect for a Momon hearing to be conducted before the State closes its case-in-chief. We disagree.

In Momon v. State, 18 S.W.3d 152 (Tenn. 1999), our Supreme Court held that the right to testify at one's own trial is a fundamental right that may only be waived personally by the defendant. 18 S.W.3d at 161. Additionally, the Supreme Court established the procedure defense counsel must employ when the defendant chooses not to testify. The Court stated:

> *At any time before the conclusion of proof*, defense counsel shall request a hearing, out of the presence of the jury, to inquire of the defendant whether the defendant has made a knowing, voluntary, and intelligent waiver of the right to testify. This hearing shall be placed on the record and shall be in the presence of the trial judge.

Id. at 162 (emphasis added). The Supreme Court also outlined what information should be included in the record to satisfy the hearing requirements. Id.

The Petitioner does not dispute that a Momon hearing was conducted in this case–he simply claims that the procedure in Momon requires that the hearing take place after the State closes its case-in-chief. By its own terms, Momon does not require the hearing to be conducted after the State closes its case-in-chief. The Petitioner cites no authority, nor have we found any authority, which contradicts Momon's requirement that the hearing be conducted "[a]t any time before the conclusion of proof." See id. Therefore, this issue has

no merit, and trial counsel was not deficient for failing to object to the State calling a witness after the Momon hearing.

*Failure to Advise the Petitioner of his Right to Testify*

The Petitioner also claims that trial counsel failed to advise him of his right to testify at trial. However, there is no proof in the record to support this allegation. Because the Petitioner has failed to cite to the record or authority and has failed make an argument in support of this claim, he has waived our consideration of the issue on appeal. See Tenn. Ct. Crim. App. R. 10(b). We also note that trial counsel testified that the Petitioner told trial counsel multiple times that he did not want to testify on his own behalf.

*Failure to Investigate Alibi Defense*

The Petitioner relies on State v. Burns, 6 S.W.3d 453 (Tenn. 1999), to argue that trial counsel was deficient for failing to investigate the Petitioner's alibi. In Burns, the defendant was charged with the first-degree murder of her ex-husband. Burns, 6 S.W.3d at 456. The State's theory of the case was that the defendant conspired with two of her ex-husband's associates and paid them to murder the victim. Id. at 456-59. However, third parties overheard conversations between the victim's associates wherein they were plotting to kill the victim for independent motives. Id. at 460. The defendant was not present during this conversation and was never mentioned by the associates. Id. The third parties reported this conversation to the police, but the police took no action. Id. After the victim's death, the third parties reported their observations to the Tennessee Bureau of Investigation ("TBI"), and TBI agents reduced their observations into a written report, which was given to defense counsel during pretrial discovery. Id. However, trial counsel did not investigate the allegations in the TBI report. Id. The Tennessee Supreme Court held that, because the TBI report was available to counsel before trial, counsel was deficient for failing to investigate the allegations and substantiate the statements of the third party witnesses. Id. at 462-63. In light of the minimal corroborating evidence to support the State's theory, the Supreme Court found that the defendant was prejudiced because evidence of an alternative plot to kill the victim could have raised reasonable doubt. Id. at 463.

Similarly, the Petitioner argues that State v. Taylor, 968 S.W.2d 900 (Tenn. Crim. App. 1997), is applicable to the case at hand. In that case, this Court held that trial counsel was ineffective because he had notice that one of the charged offenses took place outside of the county where the defendant was indicted and, therefore, the charge was brought in the incorrect venue. Id. at 909. However, trial counsel did not investigate to determine where the offense occurred. Id. at 910. Had counsel investigated the venue problem, the allegation would not have been before the jury. Id. Based on those facts, this Court determined that

the defendant was denied effective assistance of counsel. <u>Id.</u> Just like counsel in <u>Burns</u>, counsel in <u>Taylor</u> had *pretrial* notice of an issue that should have been investigated.

Conversely, in the instant case, trial counsel testified that the Petitioner never told him about any possible alibi witnesses. Moreover, the purported alibi witness, Ms. Manning, admitted that she did not tell law enforcement or anyone involved in the Petitioner's defense that the Petitioner had been at her home on the day of the second charged offense. Consequently, trial counsel had no notice of Ms. Manning's potential alibi testimony before trial. Therefore, neither <u>Burns</u> nor <u>Taylor</u> control our analysis in this case, and we conclude trial counsel was not deficient for failing to investigate an alibi defense.

*Abridgement of Constitutional Rights*

The Petitioner also asserts that "he was denied a fair trial in that the abridgement of his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and his rights secured by Article I, §§ 6, 7, 8, 9, 14, and 16 of the Constitution of the State of Tennessee." Outside of this statement, the Petitioner supplies no further argument, no other citations to authority, and no citations to the record. Therefore, the Petitioner has waived our consideration of this issue on appeal. <u>See</u> Tenn. Ct. Crim. App. R. 10(b).

*Cumulative Error*

Finally, the Petitioner contends that the cumulative effect of trial counsel's errors necessitates reversal of the post-conviction court's decision. However, in order for the cumulative error doctrine to apply, more than one actual error must have been committed in the trial proceedings. <u>State v. Hester</u>, 324 S.W.3d 1, 77 (Tenn. 2010). In the post-conviction context, a petitioner cannot successfully claim he was prejudiced by counsel's cumulative error when the petitioner failed to show counsel's performance was deficient. <u>Tracy F. Leonard v. State</u>, No. M2006-00654-CCA-R3-PC, 2007 WL 1946662, at *21 (Tenn. Crim. App. July 5, 2007) <u>appeal dismissed</u>, (Tenn. Sept. 13, 2007) (citing <u>Leon J. Robins v. State</u>, No. M2005-01204-CCA-R3-PC, 2006 WL 1816361, at *20 (Tenn. Crim. App. June 27, 2006) <u>perm. app. denied</u>, (Tenn. Oct. 30, 2006)). As we have determined, the Petitioner has failed to prove trial counsel was deficient. Therefore, the cumulative error doctrine does not apply.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE